IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| ERIC A. GRAHAM, #251687, ) | |
| ) | |
| Petitioner, ) | Civil Action No. 3:09-3041-HMH-JRM |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| A.J. PADULA, ) | |
| ) | |
| Respondent. ) | |

Petitioner, Eric A. Graham ("Graham"), is an inmate at the South Carolina Department of Corrections serving a sentence of life imprisonment without parole for murder. Graham filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 which was received by the Court on November 20, 2009. Respondent filed a return and motion for summary judgment on March 24, 2010. Because Graham is proceeding *pro se*, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) was issued on March 31, 2010 advising him of his responsibility to respond to the motion for summary judgment. Graham filed a motion for summary judgment on June 3, 2010 and an additional response on July 9, 2010.

1

**Background**

On the night of December 7, 1996, Graham's girlfriend, Curtisha "Birdie" Wingate, died from a gunshot wound to the head at her home in Darlington County. Forensic evidence showed that the shot entered under the victim's chin. Gunpowder residue tests were positive for Graham's hands and negative for the victim's hands. Graham was charged with murder. He was represented at trial by Karl H. Smith, Esquire. Graham did not testify at trial and counsel argued that the shooting was accidental. Graham was found guilty on August 28, 1998. His motion for a new trial was denied on September 4, 1998. (App. 409).

Graham was represented on appeal by the South Carolina Office of Appellate Defense. An Anders[1] brief was filed raising the following issue:

The Judge erred by failing to instruct the jury on the law of accident.

(App. 421).

The appeal was dismissed by the South Carolina Supreme Court. *See* State v. Graham, Mem.Op. 2000-MO-122 (S.C. filed October 3, 2000). (App. 432). The Remittitur was returned on October 23, 2000.

Graham filed an application for post-conviction relief ("PCR") on January 29, 2001. (App. 434). He was represented by Martin S. Driggers, Esquire. An evidentiary hearing was held on September 12, 2002. (App. 463). Although Graham raised several grounds in his application, the only issue argued at the hearing was that trial counsel was ineffective for failing to request a jury instruction on the law of accident. This was the only ground discussed in the PCR court's order of dismissal. (App. 492). After the PCR court ruled, counsel for Graham filed a motion for

---

[1] Anders v. California, 386 U.S. 738 (1967).

2

reconsideration. (App. 499). The motion was denied on December 4, 2002. (App. 508).

An appeal was filed through the South Carolina Office of Appellate Defense raising the following issue:

> Was trial counsel ineffective for failing to request a jury instruction on the law of accident?

Graham's petition for writ of certiorari was denied by the South Carolina Supreme Court on September 22, 2004. The Remittitur was returned on October 11, 2004.

Instead of following the normal path and proceeding to file a petition for a writ of habeas corpus in this Court, Graham continued to attack his conviction in state court by filing:

1. A second PCR on June 27, 2005. In this PCR, Graham attacked the court in his first PCR for failing to address the other issues raised in his application. The second PCR was dismissed as untimely and successive under South Carolina procedure. The decision was affirmed by the Supreme Court of South Carolina on December 30, 2005;

2. A state habeas petition in the Court of Common Pleas of Darlington County on November 30, 2006. The court found that Graham's petition was procedurally barred under South Carolina procedure because the grounds asserted could have been raised and addressed in his first PCR. Further, the court concluded that his only avenue of relief was filing a habeas petition in the original jurisdiction of the South Carolina Supreme Court. The decision was ultimately affirmed by the South Carolina Court of Appeals. *See* Graham v. State, Unpub.Op.No. 2008-UP-498 (Ct.App. filed September 5, 2008).

3. A state habeas petition in the South Carolina Supreme Court on June 29, 2009. The

petition was denied by the South Carolina Supreme Court on July 10, 2009.

## Grounds for Relief

In his present petition, Graham asserts he is entitled to a writ of habeas corpus on the following grounds:

**GROUND ONE:** Trial counsel violated Petitioner's 6th & 14th Amendment by failing to request the "law of accident."

**SUPPORTING FACTS:** Trial counsel's sole defense was of death being an "accident." Counsel strategically and steadfastly placed this thought in the minds of the jurors, but at the instructing phase counsel failed to request the law of "accident." So in deliberation the only charges the jury had to analyze were those of prosecution and judge. Therefore depriving Petitioner of a fair and impartial trial.

**GROUND TWO**: "Counsel violated Petitioner's 5th, 6th & 14th Amendment by failing to adequately explain the law"

**SUPPORTING FACTS**: Petitioner was indicted for "murder" on Feb. 20, 1997 and went to trial in August of "98." Throughout this period, or during, trial counsel, not once, explained to Petitioner that, if convicted, he was facing a "life sentence." On the contrary counsel told Petitioner that, if convicted, he would receive no more than "involuntary manslaughter" This misinformation led Petitioner to make a rash decision that was detrimental and injurious to his defense. "And" that decision had influence in determining the verdict of the jury.

**GROUND THREE:** "Trial Judge violated Petitioner's 5th & 14th Amendment by allowing prosecution to manipulate evidence"

**SUPPORTING FACTS**: Throughout Petitioner's trial the trial judge allowed the prosecution to shift, shape and out-right manipulate evidence. This created a prejudicial atmosphere that was, both, unconstitutional & unethical. An atmosphere that reversed the rules of prosecution and defense.

## Discussion

**A. Anti-terrorism and Effective Death Penalty Act ("AEDPA") Statute of Limitations.**

Respondent asserts that the petition should be dismissed because it was not timely filed under

the one-year statute of limitations created by the AEDPA. The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts. One of those changes was the amendment of 28 U.S.C. § 2244 to establish a one-year statute of limitations for filing habeas petitions. Subsection (d) of the statute now reads:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The one-year statute of limitations begins to run on the date the Petitioner's conviction becomes final, not at the end of collateral review. Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000). In South Carolina, a defendant must file a notice of appeal within 10 days of his conviction. Rule 203(b)(2), SCACR. Thus if a defendant does not file a direct appeal, his conviction becomes final ten days after the adjudication of guilt. Crawley v. Catoe, 257 F.3d 395 (4th Cir. 2001). If a

5

defendant files a direct appeal and his conviction is affirmed, the conviction becomes final 90 days after the final ruling of the South Carolina Supreme Court. Harris, 209 F.3d at 328, n. 1 (conviction become final on the expiration of the 90-day period to seek review by the United States Supreme Court).

The statute of limitations is tolled during the period that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statute of limitations is tolled for the entire period of the state post-conviction process, "from initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." Taylor v. Lee, 196 F.3d 557, 561 (4th Cir. 1999). Following the denial of relief in the state courts in state habeas proceedings, neither the time for filing a petition for certiorari in the United States Supreme Court, nor the time a petition for certiorari is considered by the United States Supreme Court, is tolled." Crawley v. Catoe, 258 F.3d at 399. A state collateral proceeding must be "properly filed" for the statutory tolling provisions of 28 U.S.C. § 2244(d)(2) to apply. "(A)n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." Artuz v. Bennett, 531 U.S. 4, 8 (2000) (footnote omitted). "When a post-conviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." Pace v. DiGulielmo, 544 U.S. 408, 414 (2005) quoting Carey v. Saffold, 536 U.S. 214, 236 (2002).

Generally, computing periods of time under 28 U.S.C. § 2244(d)(2) is pursuant to Fed. R. Civ. P. 6(a). Hernandez v. Caldwell, 225 F.3d 435, 439 (4th Cir. 2000).

The Fourth Circuit has held that the statute of limitations in § 2254 is not jurisdictional, but subject to the doctrine of equitable tolling. Equitable tolling applies only in "those rare instances where–due to circumstances external to the [Petitioner's] own conduct–it would be unconscionable to enforce the limitation against the [Petitioner]." Harris, 209 F.3d at 330. Under § 2244(d), the State bears the burden of asserting the statute of limitations. Petitioner then bears the burden of establishing that his petition is timely or that he is entitled to the benefit of the doctrine of equitable tolling. Hill v. Braxton, 277 F.3d 701 (4th Cir. 2002). To benefit from the doctrine of equitable tolling, a petitioner must show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way" preventing him from timely filing. Pace, 544 U.S. at 418. An attorney's mistake in calculating the filing date for a habeas petition relative to the AEDPA's statute of limitations is not an extraordinary circumstance warranting equitable tolling. Lawrence v. Florida, 549 U.S. 327, 336-337 (2007) ("Attorney miscalculation [of a deadline] is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel."). *See also* Harris, 209 F.3d at 331.

The undersigned concludes that Graham's conviction became final on or about January 23, 2001.[2] Graham's first PCR was filed on January 1, 2009. Only six days of untolled time had lapsed at that point. The statute of limitations was tolled during the pendency of that PCR, i.e., until the Remittitur was returned on October 11, 2004. The present petition was filed over five years later.[3]

---

[2] After direct appeal, the Remittitur was returned on October 23, 2000. The statute of limitations did not begin to run for an additional 90 days to allow appeal to the United States Supreme Court.

[3] Graham dated his present petition September 28, 2009, and did not fill in the blank on the petition to show when it was delivered for mailing. However, the envelope in which the petition
(continued...)

7

The undersigned concludes that Graham's second PCR and his two state habeas petitions were not "properly filed" and did not toll the statute of limitations. However, even if those actions were deemed to be properly filed and that they tolled the statute of limitations, the present petition is still untimely. Over eight months lapsed between the conclusion of Graham's first PCR and the filing of his second. Over ten months lapsed between the conclusion of the second PCR and the filing of the first state habeas action. Over nine months lapsed between the conclusion of the first state habeas action and the filing of the second state habeas action. Over four months lapsed between the conclusion of the second of the state habeas actions and the filing of the present petition. Thus, even if those actions tolled the statute of limitations, the petition is clearly untimely.

Graham does not argue that he is entitled to equitable tolling. Instead he argues in his Roseboro response that the statute of limitations should not apply as he was attempting to exhaust his claims in state court. These arguments are without merit, and the petition should be dismissed as untimely.

**B. Procedural Bar**

Respondent asserts that only Graham's claim that his trial counsel was ineffective for failing to request a jury instruction on the law of accident (Ground 1) has been properly reviewed by the South Carolina courts, and that his remaining claims are procedurally barred.

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest

---

$^3$(...continued)
was received shows that it was delivered for mailing at the institutional mailroom, and thus filed for statute of limitations purposes, on November 18, 2009.

state court with authority to decide the issue before the federal court will consider the claim.

1. **Exhaustion**

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)(i) there is either an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he

9

can proceed on the claim in this court. *See* O'Sullivan v. Boerckel, 526 U.S. 838 ( 1999).

The United States Supreme Court has consistently enforced the exhaustion requirement.

> The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act....

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. *See* SCACR 207(b)(1)(B) and Blakeley v. Rabon, 266 S.C. 68, 221 S.E.2d 767 (1976). The second avenue is by filing an application for post-conviction relief ("PCR"). See S.C. Code Ann. § 17-27-10 *et seq*. A PCR applicant is also required to state all of his grounds for relief in his application. *See*, S. C. Code Ann. § 17-27-90. A PCR applicant cannot assert claims on collateral attack which could have been raised on direct appeal. Simmons v. State, 264 S.C. 417, 215 S.E.2d 883 (1975). Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. The South Carolina Supreme Court will only consider claims specifically addressed by the PCR court. If the PCR court fails to address a claim as is required by S.C.Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. Marlar v. State, 375 S.C. 407, 653 S.E.2d 266 (2007). A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or

through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim.[4] Further, he may present only those claims which have been squarely presented to the South Carolina appellate courts. "In order to avoid procedural default [of a claim], the substance of [the] claim must have been fairly presented in state court...that requires the ground relied upon [to] be presented face-up and squarely. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir. 1999) (internal quotes and citations omitted). If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). If petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. *See* Rose v. Lundy, *supra*.

2.   **Procedural Bypass**[5]

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts,

---

[4] In cases where the South Carolina Supreme Court applied a procedural bar, however, this court is directed to also apply that bar, except in certain limited circumstances. See discussion below on procedural bypass.

[5] This concept is sometimes referred to as procedural bar or procedural default. If a petitioner procedurally bypasses his state remedies, he is procedurally barred from raising them in this court.

Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both 'cause' for noncompliance with the state rule and 'actual prejudice resulting from the alleged constitutional violation.'

Smith v. Murray, *supra*, quoting Wainwright v. Sykes, 433 U.S. at 84 (1977); *see also* Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. *See* Murray v. Carrier, 477 U.S. 478, 496 (1986).

12

### 3. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner in this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts, and this court is barred from considering the claim (absent a showing of "cause" and "actual prejudice"). In such an instance, the exhaustion requirement is "technically met" and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert. denied, 522 U.S. 833 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-98 (1989); and George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996).

### 4. Excusing Default

The requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1989). First, a petitioner may obtain review of a procedurally barred claim by establishing cause for the default and actual prejudice from the failure to review the claim. Coleman v. Thompson, 501 U.S. at 750 and Gary v. Netherland, 518 U.S. 152, 162 (1996). Second, a petitioner may rely on the doctrine of actual innocence.

A petitioner must show both cause and actual prejudice to obtain relief from a defaulted claim. In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n. 24 (1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner may establish cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty

13

of his claim, or show interference by state officials. Murray v. Carrier; Clozza v. Murray, 913 F.3d 1092 (4th Cir. 1990), *cert. denied*, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir.), *cert. denied*, 485 U.S. 1000 (1988). Because a petitioner has no constitutional right to counsel in connection with a PCR application and/or an appeal from the denial thereof, he cannot establish cause for procedural default of a claim by showing that PCR counsel was ineffective. Wise v. Williams, 982 F.2d 142, 145 (4th Cir. 1992) *cert. denied*, 508 U.S. 964 (1993). A petitioner must show reasonable diligence in pursuing his claim to establish cause. Hoke v. Netherland, 92 F.3d 1350, 1354 n. 1 (4th Cir. 1996). Further, the claim of cause must itself be exhausted. Edwards v. Carpenter, 529 U.S. 446 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Generally, a petitioner must show some error to establish prejudice. Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), *cert. denied*, 531 U.S. 1054 (2000). Additionally, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice. Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997).

"Actual innocence" is not an independent claim, but only a method of excusing default. O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir. 1996), *aff'd*, 521 U.S. 151 (1997). To prevail under this theory, a petitioner must produce new evidence not available at trial to establish his factual innocence. Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999). A petitioner may establish actual innocence as to his guilt, *Id.*, or his sentence. Matthews v. Evatt, 105 F.3d 907, 916 (4th Cir. 1997).

### 5. Procedure

Procedural default is an affirmative defense which is waived if not raised by respondents. Gray v. Netherland, 518 U.S. at 165-66. It is petitioner's burden to raise cause and

prejudice or actual innocence. If not raised by petitioner, the court need not consider the defaulted claim. Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), *cert. denied*, 517 U.S. 1171 (1996).

The undersigned concludes that Graham's second and third grounds for relief in the present petition are procedurally barred. These are issues that were required to be litigated in his first PCR. The state courts found that they were barred under South Carolina procedure.

**C. Ineffective Assistance of Counsel**

Graham asserts that his trial attorney was ineffective for failing to request a jury instruction on the law of accident. This claim was raised in Graham's first PCR and in the Anders brief on appeal. Respondent argues that even if Graham's petition was timely, he would not be entitled to relief.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was

15

prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added).

Strickland at 694-95.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the Strickland test. *See* Williams v. Taylor, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

The PCR court found that counsel was not ineffective for failing to request a jury instruction on the law of accident because such a request would not have been permissible under South Carolina law based on the evidence submitted at trial. In doing so, the PCR court stated the South Carolina law:

> For a homicide to be excusable on the ground of accident, it must be shown that the killing was unintentional, the Defendant was acting lawfully, and due care was exercised in the handling of the weapon. State v. Burris, 334 S.C. 256, 513 S.E.2d 104 (1999) (citing State v. Goodson, 312 S.C. 278, 440 S.E.2d 370 (1994)). The law

to be charged to the jury is determined from the evidence presented at trial. State v. Crosby, 348 S.C. 387, 559 S.E.2d 352 (2002).

(App. 493-494).

The PCR court carefully reviewed the evidence in the record and specifically found that Graham would not have been entitled to the jury instruction because there was no evidence in the record that Graham was exercising due care in the handling of the weapon at the time of the fatal shot. (App. 496). This ruling was affirmed on appeal.

Since Graham filed his petition after the effective date of the AEDPA, review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir.), *cert. denied,* 521 U.S. 371 (1998) and Green v. French, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d). *See* Williams v. Taylor, 529 U.S. 362 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases .... A state- court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.

17

* * *

> [A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 1519-20. Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 1521.

Since the jury instruction at issue was unavailable to Graham at trial under South Carolina law, the state court determination was not contrary to, or an unreasonable application of, the Strickland standard.

## Conclusion

The present petition is untimely. Further, Petitioner is not entitled to relief under the one ground that was properly presented to the South Carolina courts for review. Therefore, it is recommended that Respondent's motion for summary judgment be **granted** and the petition **dismissed** without an evidentiary hearing. It is further recommended that Petitioner's motion for summary judgment be **denied**.

_____
Joseph R. McCrorey
United States Magistrate Judge

September 13, 2010
Columbia, South Carolina

**The parties are referred to the Notice Page attached hereto.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).